UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SYLVIA BENAVIDEZ, | ) | 1:07-cv-00496-SMS |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER DENYING |
| v. | ) | PLAINTIFF'S SOCIAL SECURITY |
| | ) | COMPLAINT (DOC. 1) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | ORDER DIRECTING THE ENTRY OF |
| Security, | ) | JUDGMENT FOR DEFENDANT MICHAEL J. |
| | ) | ASTRUE, COMMISSIONER OF SOCIAL |
| Defendant. | ) | SECURITY, AND AGAINST PLAINTIFF |
| | ) | SYLVIA BENAVIDEZ |
| | ) | |

Plaintiff is represented by counsel and is proceeding in forma pauperis with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act). Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment.[1] The matter is currently before the Court on the parties' briefs,

---

[1] On May 9, 2007, the Honorable Oliver W. Wanger ordered the case reassigned to the undersigned Magistrate Judge for all purposes.

1

which have been submitted without oral argument to the Honorable Sandra M. Snyder, United States Magistrate Judge.

I. Procedural History

On July 23, 2002, Plaintiff applied for disability insurance benefits (DIB), alleging disability since July 11, 1997, due to surgeries for carpal tunnel syndrome, shoulder injury, knee pain, and her feet. (A.R. 86-89.) After a hearing before an administrative law judge (ALJ) on August 18, 2004, an unfavorable decision issued on September 23, 2004, in which it was determined that Plaintiff was not disabled. (A.R. 45-53.) In February 2005, the Appeals Council remanded the matter for consideration of evidence submitted with the request for review, holding a new hearing, and issuing a decision; the Appeals Council directed the ALJ to identify the demands of Plaintiff's past relevant work and compare them with Plaintiff's residual functional capacity (RFC), and, if warranted, obtain evidence from a vocational expert regarding the effect of assessed limitations on the occupational base. (A.R. 76-78.)

On March 13, 2006, a hearing was held before the Honorable Bert C. Hoffman, Jr. (A.R. 15.) Plaintiff appeared with an attorney and testified. (A.R. 15.) On September 15, 2006, the ALJ denied Plaintiff's application for benefits. (A.R. 15-24.) After the Appeals Council denied Plaintiff's request for review on January 12, 2007 (A.R. 8-10), Plaintiff filed the complaint in this action on March 28, 2007. Briefing commenced on September 24, 2007, with the filing of Plaintiff's opening brief, and was completed on January 2, 2008, when Plaintiff filed a reply to Defendant's brief in opposition.

II. <u>Standard and Scope of Review</u>

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971), but less than a preponderance, <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson</u>, 402 U.S. at 401. The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion; it may not simply isolate a portion of evidence that supports the decision. <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the determination of the Commissioner as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, and not the Court's, to resolve conflicts in the evidence. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 (9th Cir. 1975).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's determination that the claimant is not disabled if the

Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. See, Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If the Court concludes that the ALJ did not use the proper legal standard, the matter will be remanded to permit application of the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th Cir. 1987).

### III. Disability

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

1   The regulations provide that the ALJ must make specific
2 sequential determinations in the process of evaluating a
3 disability: 1) whether the applicant engaged in substantial
4 gainful activity since the alleged date of the onset of the
5 impairment, 20 C.F.R. § 404.1520 (1997);[2] 2) whether solely on the
6 basis of the medical evidence the claimed impairment is severe,
7 that is, of a magnitude sufficient to limit significantly the
8 individual's physical or mental ability to do basic work
9 activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the
10 basis of medical evidence the impairment equals or exceeds in
11 severity certain impairments described in Appendix I of the
12 regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant
13 has sufficient residual functional capacity, defined as what an
14 individual can still do despite limitations, to perform the
15 applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and
16 5) whether on the basis of the applicant's age, education, work
17 experience, and residual functional capacity, the applicant can
18 perform any other gainful and substantial work within the
19 economy, 20 C.F.R. § 404.1520(f).
20   Here, the ALJ concluded that Plaintiff had severe
21 impairments of musculoskeletal pain, left knee degenerative joint
22 disease, obesity, and residual carpal tunnel syndrome symptoms on
23 the right side that did not meet or medically equal a listed
24 impairment; Plaintiff had the RFC to perform the full range of
25 sedentary work that precluded lifting and carrying more than ten
26 pounds at a time, standing or walking more than occasionally, or

---

[2] All references are to the 2006 version of the Code of Federal Regulations unless otherwise noted.

5

sitting for more than about six hours of an eight-hour workday. Although Plaintiff could not perform her past relevant work as a journeyman clerk, in light of her age, education, work experience, and RFC to perform the full range of sedentary work, there were jobs that existed in significant numbers that Plaintiff could perform pursuant to Medical-Vocational Rule 201.25. (A.R. 17-24.)

> IV. Failure to Find that Plaintiff's Mental Impairment Was Severe

Plaintiff argues that the ALJ erred in determining that Plaintiff's mood disorder was not a severe impairment because he failed to state reasons for rejecting functional limitations assessed by Dr. Ina Shalts, M.D., a psychiatrist who examined Plaintiff on February 2, 2003.

> A. Legal Standards

The step-two inquiry regarding severity is a de minimis screening device to dispose of groundless claims. Bowen v. Yuckert, 482 U.S. 153-54 (1987). In order to be disabled, one must suffer from an impairment or combination thereof that is severe, which is defined as meaning that it significantly limits one's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities include the abilities and aptitudes necessary to do most jobs, such as physical functions of walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work

situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). If the evidence establishes only that one's impairment or combination thereof was only a slight abnormality that had no more than a minimal effect on an individual's ability to work, it is not severe. See Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). An ALJ may find that a claimant lacks a medically severe impairment or combination thereof only when his conclusion is clearly established by medical evidence. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).

With respect to expert opinions, an ALJ may disregard a treating physician's opinion that is controverted by other opinions only by setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989). This burden is met by stating a detailed and thorough summary of the facts and conflicting clinical evidence, stating the interpretation of the evidence, and making findings. Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir 1986). The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The uncontradicted opinion of an examining physician may be rejected only if the Commissioner provides clear and convincing reasons for rejecting it. Id.; Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001). An ALJ can reject the opinion of an examining physician and adopt the contradictory opinion of a nonexamining physician only for specific and legitimate reasons that are supported by substantial evidence in the record. Moore v.

7

1  Commissioner of Social Security Administration, 278 F.3d 920, 925
2  (9th Cir. 2002) (quoting Lester v. Chater, 81 F.3d at 830-31). The
3  opinion of a nontreating, nonexamining physician can amount to
4  substantial evidence as long as it is supported by other evidence
5  in the record, such as the opinions of other examining and
6  consulting physicians, which are in turn based on independent
7  clinical findings. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th
8  Cir. 1995). Independent clinical findings can be either 1)
9  diagnoses that differ from those offered by another physician and
10 that are supported by substantial evidence, or 2) findings based
11 on objective medical tests that the other physician has not
12 himself or herself considered. Orn v. Astrue, 495 F.3d 625, 632
13 (9th Cir. 2007).

         B.  Medical Evidence

     The pertinent medical evidence included the opinions of two consulting, examining physicians; state agency medical consultants; and a treating physician.

     Eugene T. Couture, Ph.D., a clinical neuropsychologist, performed an examination and psychological evaluation of Plaintiff in December 2000 in connection with a state workers' compensation proceeding, and he rendered a report. (A.R. 276-88.) He reviewed numerous medical reports from several years, performed a mental status exam, and administered the Minnesota Multiphasic Personality Inventory-2, which produced results consistent with a personality disorder and disturbance in interpersonal relationships due to acting out. He found no evidence of a thought disorder, and he concluded that Plaintiff displayed adequate attention and concentration and could perform

simple mathematical tasks. His diagnosis was axis I, dysthymic disorder, generalized anxiety disorder, pain disorder associated with both psychological factors and a general medical condition with somatiform symptoms, and malingering; axis II, personality disorder not otherwise specified with mixed pattern of symptoms; and her global assessment of functioning (GAF) was 60 (moderate symptoms). (A.R. 286-87.) Dr. Couture expressly concluded that Plaintiff did not have the symptoms of a major depressive illness, and her anxiety was mild. (A.R. 287.) She was malingering; she exaggerated her physical disorders, gave different stories to different practitioners, and failed to improve from treatment. (Id.) Her personality was antisocial, depressive, and dependent. He stated that he would not disable Plaintiff from a return to work by her psychological condition; her conditions were long-standing and were in place when she had previously been working; and she could be expected to return to work without significant interference from her psychological conditions. (A.R. 287-88.)

Dr. Couture participated in Plaintiff's treatment, consisting of four sessions, from March through April 2001, at the request of doctors who desired to have Plaintiff declared permanent and stationary. (A.R. 271-75.) He reported that Plaintiff stated that her mood was good because of Prozac that she was taking; her anger had improved, and she denied experiencing any extreme anxiety, depression, or need for any particular psychological intervention. Dr. Couture discussed her malingering with her. He agreed that she should proceed to vocational rehabilitation with an option of further individual

treatment to maintain her rehabilitation process if she decompensated during rehabilitation, but he opined that she was permanent and stationary with respect to her psychological presentation. The diagnosis was essentially the same but without malingering and with a GAF of 65 (moderate to mild symptoms).

In early February 2003, Dr. Ina Shalts, an examining psychiatrist, performed a comprehensive psychiatric evaluation. (A.R. 361-64.) Plaintiff's stream of mental activity and speech were normal; her mood was depressed; investigation of intellectual functioning and sensorium revealed that Plaintiff was alert and oriented, performed all memory tasks adequately, had average intellect, could follow a three-step command, but could not perform serial seven's. Dr. Shalts opined that Plaintiff was not then malingering; the diagnosis was axis I, mood disorder secondary to general medical condition, rule out major depressive disorder recurrent, rule out somatization disorder; GAF 55. He stated that Plaintiff could understand, remember, and carry out simple instructions and could handle her own funds. He opined that she had "some difficulty" with social function and "some difficulty" with concentration, persistence, and pace; she would have "some difficulties" responding appropriately to coworkers and supervisors and dealing with a usual work situation. (A.R. 364.)

In late February 2003, Dr. Harvey Biala, M.D. a non-examining psychiatrist participating as a state agency medical consultant, opined that Plaintiff was only moderately limited in the ability to understand, remember, and perform detailed instructions; otherwise, she was not significantly limited. She

10

could perform simple, routine, repetitive tasks but nothing complex, could sustain concentration and persistence for two-hour intervals, could adequately interact with the public, peers, and supervisors in basic work situations, and adapt to normal work environment situations at the level of simple, repetitive tasks. (A.R. 412-14.)

On November 17, 2003, a progress note from internal medicine practitioner Dr. Jessy Jacob, with whom Plaintiff was going to establish a treating relationship, reflected that Plaintiff was examined by Dr. Jacob, who diagnosed in pertinent part "Depression, fairly controlled." (A.R. 447-48.)

### C. The ALJ's Decision

In his decision, the ALJ stated the following:

> On December 2, 2000, the claimant underwent a psychological evaluation and was diagnosed on Axis I with a dysthymic disorder, generalized anxiety disorder, a pain disorder associated with psychological factors and general medical condition and with malingering. On Axis II she was diagnosed with a personality disorder (Exhibit 1F, p. 103). The psychologist determined the claimant could return to work without significant interference from her psychological conditions (*Id.* at p. 105). The psychologist did not recommend any psychological treatment because the claimant appeared to be willfully exaggerating her complaints (*Id.* at p. 89).
>
> On February 2, 2003, the psychiatric consultative examiner diagnosed the claimant with a mood disorder secondary to general medical condition (Exhibit 4F, p. 3). On November 17,2003, the claimant's treating physician diagnosed the claimant with depression that was "fairly controlled" (Exhibit 8F, p. 17).
>
> For the reasons above, I find the claimant's symptoms from her alleged mental impairments are no more than "slight" abnormalities having no more than a "minimal" effect upon her ability to work. Accordingly, I find the claimant does not have a medically determinable "severe" mental impairment (S.S.R. 85-28).

(A.R. 18.)

In connection with Plaintiff's credibility, the ALJ further stated:

> As noted previously, a psychologist actually diagnosed the claimant with malingering (Exhibit 1F, p. 103). The psychologist reviewed extensive medical records and noted that the claimant told inconsistent stories to different doctors, had inconsistent objective strength tests results between examinations and that she failed to improve with any treatment given her by the various doctors. The psychologist determined the claimant was exaggerating her limitations (*Id.* at p. 104.) The psychologist observed the claimant talk and make multiple gestures with her hands without any indication of pain at all until she was asked about her pain, whereupon she started exhibiting pain behavior (*Id.* at p. 99).

(A.R. 20.) The ALJ considered evidence that Plaintiff exaggerated her physical symptoms as well, and he ultimately concluded that Plaintiff was not credible. (A.R. 21.) He also concluded that the Plaintiff's allegations concerning her physical limitations were unsupported by the minimal objective findings in the record, were subject to manipulation by Plaintiff, and thus were to be given no evidentiary weight. (Id.)

### D. Analysis

The Court has considered the entirety of the ALJ's decision in reviewing the ALJ's reasoning. It is clear from the ALJ's statements concerning Plaintiff's mental impairment that the ALJ credited the treating doctor's opinion that Plaintiff's condition was fairly controlled, and he further credited the opinions of Dr. Couture and Dr. Biala that Plaintiff was a malingerer who was able to work.

The decision is fairly read and reasonably interpreted as reflecting the conclusion that with respect to Plaintiff's mental impairment, the medical evidence demonstrated that Plaintiff required only minimal treatment. It is clear that the ALJ put

1  great weight on Dr. Couture's opinion because of its basis of
2  extensive medical records and observations of Plaintiff. Further,
3  the ALJ himself carefully reviewed the evidence pertaining to
4  Plaintiff's credibility, including the medical evidence of
5  record, which was often in contrast to Plaintiff's exaggerated
6  complaints.
7      The ALJ stated legally sufficient reasons for his treatment
8  of the opinions. It is apparent that the ALJ concluded that the
9  treating physician's opinion was consistent with the great weight
10 of the medical evidence, and that he validly relied on it.
11 Indeed, Plaintiff does not challenge the ALJ's decision in that
12 respect. Further, the ALJ stated specific and legitimate reasons
13 for rejecting the opinion of Dr. Shalts and adopting the other
14 opinions. Factors pertinent to evaluating medical opinions
15 include the amount of relevant evidence that supports the opinion
16 and the quality of the explanation provided; the consistency of
17 the medical opinion with the record as a whole; and the degree of
18 familiarity the expert has with other information in the case
19 record. 20 C.F.R. § 404.1527(d)(3)-(6); Orn v. Astrue, 495 F.3d
20 625, 631 (9th Cir. 2007).
21     Further, it is established that where an expert's opinion is
22 based largely on the Plaintiff's own subjective description of
23 his or her symptoms, and the ALJ has discredited the Plaintiff's
24 claim as to those subjective symptoms, the ALJ may reject the
25 opinion. Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016,
26 1020 (9th Cir. 1992); Fair v. Bowen, 885 F.2d 597, 605 (9th Cir.
27
28

1989).[3] Here, in connection with both Plaintiff's mental and physical impairments, the ALJ carefully recounted the evidence of the inconsistencies in Plaintiff's statements, the evidence of manipulation and exaggeration of symptoms throughout the record, and the divergence between the objective medical evidence on the one hand, and Plaintiff's complaints and statements on the other. It is reasonably inferred that the ALJ concluded that the validity of Dr. Shalts's opinion was severely undercut by Plaintiff's malingering.

Plaintiff argues that the ALJ's reasoning was necessarily insufficient because he did not expressly mention the limitations which Dr. Shalts stated in her opinion. The Court is mindful that a fundamental principle of review is that this Court is limited to reviewing the findings of the ALJ and to reviewing the specific facts and reasons that the ALJ asserts. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (holding in part that the mere presence of evidence in the record that would support an ALJ's conclusions, in the absence of the ALJ's discussion thereof, was insufficient). The district court cannot make findings for the ALJ. Id. A district court cannot affirm the judgment of an agency on a ground the agency did not invoke in making its decision. Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001).

However, it is not necessary to say expressly that each and every opinion in a case is rejected or accepted; a reviewing court may draw specific and legitimate inferences from

---

[3] The Court notes that Plaintiff has not mounted a legal challenge to the ALJ's findings concerning Plaintiff's credibility or concerning Plaintiff's physical impairments.

discussions of the findings and opinions of another doctor, particularly where conflicting evidence is detailed and interpreted, and findings are made. See, Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

Here, although the ALJ did not expressly mention Dr. Shalts's vague assignment of "some difficulties" with Plaintiff's functioning, the ALJ did refer to the examination and diagnosis; it is clear that the ALJ did not fail to consider the evidence. The ALJ stated reasons for crediting Dr. Couture's opinion that Plaintiff could work; he detailed the evidence concerning Plaintiff's mental impairment sufficiently to show that he considered the treating doctor's opinion that Plaintiff's condition was controlled to be consistent with the weight of the pertinent medical evidence; and he expressed findings concerning Plaintiff's credibility and malingering that reflected his judgment to discredit evidence that did not acknowledge Plaintiff's malingering. Although the ALJ did not set forth a word-for-word adoption and rejection of each opinion, the evidentiary framework and the ALJ's assessment of it were set forth sufficiently in this case for this Court to understand ALJ's position on the evidence and his reasoning, and to be able to determine that the reasons were specific, legitimate, and supported by substantial evidence.

The Court rejects Plaintiff's assertion, made in the reply brief, that Dr. Shalts's limitations were necessarily inconsistent with a finding that Plaintiff's mental impairment was not severe. Dr. Shalts's limitations were vague and ambiguous; the extent of "some difficulties" is unclear with

15

respect to the degree of the limitation.[4] It was within the province of the ALJ to resolve any conflicts and ambiguity. Morgan v. Commissioner, 169 F.3d 595, 603 (9th Cir. 1999). The opinions of Dr. Couture and the state agency physicians constituted substantial evidence supporting the ALJ's conclusion that Plaintiff's mental impairment was not severe because it did not have more than a minimal effect on her ability to perform basic work activities.

V. Disposition

Accordingly, the Court concludes that the ALJ's reasoning was adequately articulated, the decision was made according to correct legal standards, and his reasons were supported by substantial evidence.

Accordingly, the Court AFFIRMS the administrative decision of the Defendant Commissioner of Social Security and DENIES Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Sylvia Benavidez.

IT IS SO ORDERED.

**Dated:  March 17, 2008**         /s/ Sandra M. Snyder
                                  UNITED STATES MAGISTRATE JUDGE

---

[4] The GAF, or global assessment of functioning, of 55 attributed to Plaintiff by Dr. Shalts does not support a different result. A GAF is a report of a clinician's judgment of the individual's overall level of functioning and is used to plan treatment and to measure the impact of treatment as well as predicting its outcome. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 30 (4th ed.). A GAF of 55 reflects moderate symptoms or moderate difficulty in social or occupational functioning. (Id. at 32.) A GAF does not have a direct correlation to the severity requirements in the SSA listings of mental disorders. Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 F.R. 50746, 50764-65 (August 21, 2000).